[Civ. No. 2430.   Fourth Appellate District.—January 12, 1940.]

JOHN BLANTON, Jr., a Minor, etc., et al., Appellants, v. ROBERT CURRY et al., Respondents.

Bautzer & Ryan, G. Bentley Ryan, Gregson Bautzer, Flanagan & Sampson, Richard Hunt Sampson and Bernard M. Silbert for Appellants.

Fred A. Wilson and Martin J. Coughlin for Respondents.

GRIFFIN, J.—This is an action for damages filed by the plaintiff John Blanton, Jr., a minor of the age of 12 years, through his father as guardian *ad litem* and against defendant Robert Curry, the driver of the automobile involved, and defendant Mrs. A. Keith Koehler, as owner of the automobile.

The complaint alleged in general terms that on December 12, 1936, at about 5:45 P. M., John Blanton, Jr., was attempting to cross a thoroughfare known as Euclid Avenue in the town of Upland, when he was run into by a Buick roadster automobile being operated by the defendant Curry in a negligent manner. In the second cause of action it was alleged that defendant Curry operated the automobile with the express or implied permission of the defendant Koehler; and in a third cause of action it was alleged that the defendant Curry was the agent of the defendant Koehler. The father, John Blanton, by a fourth cause of action, sought to recover for medical expense incurred on behalf of his son. To this complaint and to each cause of action thereof the defendants Curry and Koehler answered denying generally and specifically any negligence on the part of the defendant Curry. The answer further set up a defense of contributory negligence in that the plaintiff John Blanton, Jr., failed to keep a lookout for oncoming automobiles. Upon the issues thus framed the cause proceeded to trial.

The case was tried on November 15 and 16, 1938, the jury reaching a verdict in favor of the defendants and against the plaintiffs. Judgment was entered accordingly. Plaintiffs thereafter filed a motion for new trial on all the statutory grounds and particularly supported their motion, as to the

grounds of accident and surprise, and irregularity of proceedings of the court by which plaintiff was prevented from having a fair trial, by the affidavit of one of the attorneys for plaintiffs. This motion was denied. The plaintiffs thereupon appealed from the judgment entered and from the order denying the plaintiffs' motion for new trial.

The principal point raised on this appeal by appellants is the claimed error of the trial court and its claimed abuse of discretion in refusing to give any of the plaintiffs' submitted instructions (with the exception of two instructions on the question of damages). So far as the plaintiffs' case is concerned, his version of the manner in which the accident occurred is as follows: The accident occurred on Euclid Avenue, a street running north and south, having a parkway in the center thereof planted to large pepper trees, near the place where Euclid Avenue intersects G Street. G Street is described as a thoroughfare extending east and west but which at its intersection with Euclid Avenue does not continue through to the west in a straight or right-angle course but dead-ends at the westerly curb of Euclid Avenue. John and his brother Virgil, aged 14, were walking southerly on the sidewalk on the west portion of Euclid Avenue a short distance before arriving at G Street. They then pursued a course on an angle toward the southeast to cross the west driveway of Euclid Avenue and also the parkway above described. It was their intention to cross to the sidewalk of G Street on the southeast corner of the intersection. After stepping off the west curb of Euclid Avenue at a place described by one witness as within the area which would be encompassed by the prolongation of the south curb line of G Street and the sidewalk on the south side of. G Street, John looked to the south and saw the automobile of the defendant approaching but did not observe any lights on it, and when he was in the center of the west driveway of Euclid Avenue, seeing that the car approaching would strike him if he remained in the position he was in when he observed the car for the first time, he darted and attempted to run out of the way of the car but was struck by the right portion of the defendants' automobile. He was rendered unconscious by a severe injury to his head. A car was also approaching about that time from the north on the west side of Euclid Avenue with lights, but was not close enough to him to cause any

particular concern. Virgil testified that he did not see any lights on the automobile of the defendants until after the car had come to rest, and at that time he did see the lights shining on the body of his brother which was some ten feet ahead of the standing automobile. He estimated the speed of the automobile at between ''30 and 35 miles at least'' when the car passed by, approximately a foot or two in front of him.

No witness testified that any horns were sounded prior to the impact. The defendant Curry related that he was operating his car at approximately 20 miles an hour when suddenly there appeared in front of his left headlight the figures of the boys, which he did not see until he was immediately upon them and that he was therefore unable to avoid colliding with them.

We have set forth the factual background in order to properly evaluate the magnitude of the claimed legal error hereinafter presented. The facts must be considered in connection with the instructions offered and refused. The sequence of events leading up to the refusal of the instructions are as follows: The trial commenced on Tuesday, the 15th day of November, 1938, at 10 o'clock A. M. and the court proceeded with the taking of evidence throughout Tuesday and during the morning of Wednesday, the 16th day of November, 1938. At the noon recess on Wednesday the plaintiffs had not yet rested their case. Up to this time plaintiffs' counsel had not been served with any proposed instructions on behalf of defendants. Appellants' counsel, in his affidavit, stated that he had prepared all of his proposed instructions prior to the trial and that he did not hand in the said instructions to the court because no request was made by the court or by any officer of the court, or by anyone for any instructions, and no mention thereof was made by counsel for the defendants; that no mention of instructions was made by defendants' counsel at any time and no instructions were ever served upon him, until he returned to the court room after the noon recess, at approximately 2 P. M., of the afternoon of November 16, 1938, at which time he found, lying on the table in front of his chair, a series of instructions; that he had not yet rested his own case; that immediately upon receiving defendants' instructions he served upon the attorney for the defendants his proposed instructions and secured an acknowl-

edgment of the service thereof on the back of the original instructions; that thereupon affiant delivered plaintiffs' instructions to the court in his chambers. At 2 o'clock P. M. of that day the court then proceeded with the further trial of the action.

Defendants' counsel, at the morning recess, some time after the first witness was sworn and examined, delivered certain instructions to the court. At the time he had other instructions then prepared which he wished to check over before submitting them to the court. He then submitted these last-mentioned additional instructions at the same time that counsel for the plaintiffs submitted his. These additional instructions of defendants, together with the instructions offered by plaintiffs, were rejected by the court upon the ground that they were not delivered to the court prior to the swearing of the first witness under section 607a of the Code of Civil Procedure, which provides in part as follows:

"In every case which is being tried before the court with a jury, it shall be the duty of counsel for the respective parties, before the first witness is sworn, to deliver to the judge or justice presiding at the trial, and serve upon opposing counsel, all proposed instructions to the jury covering the law as disclosed by the pleadings. Thereafter, and before the court has commenced instructing the jury, and before the commencement of the argument, counsel may deliver to such judge or justice, and serve upon opposing counsel, additional proposed instructions to the jury upon questions of law developed by the evidence and not disclosed by the pleadings. . . . Any proposed instruction which is delivered to the judge or justice at a time later than is provided for herein may be disregarded; but, in that event, the judge or justice shall write upon the margin of such proposed instruction the fact that he refused to consider the same for the reason that the requirements of this section have been disregarded."

Appellants now argue that it was prejudicial error for the court to refuse to give any of the plaintiffs' instructions (except two on the question of damages) while giving over 23 of defendants' instructions offered and presented and accepted by the court after the first witness was sworn. A reading of section 607a of the Code of Civil Procedure reveals the fact that the section is divided into two requirements. The first is that proposed instructions covering mat-

ters disclosed by the pleadings be presented before the first witness is sworn. Secondly, if the matter is not disclosed by the pleadings, but is a question of law developed by the evidence, then instructions covering such matter shall be delivered to the court before the commencement of the argument. The penalty imposed for failure to comply with the above requirements is that the judge *may* disregard instructions handed in at a later time than that required, in which event the judge shall write upon the proposed instruction the fact of its refusal for failure to comply with this section. It is to be observed that the section requires that the proposed instructions in all cases be served upon opposing counsel.

It is no doubt the rule that if any instructions offered by the plaintiffs were material and correct statements of the law and were on matters developed by the evidence rather than disclosed by the pleadings, then the trial court was required to give such instructions or instruction; and if the court refused instructions under the above circumstances, then plaintiff is entitled to a reversal if such error were prejudicial within the meaning of article VI, section 4½ of the Constitution. (*Kirkpatrick* v. *Damianakes*, 15 Cal. App. (2d) 446 [59 Pac. (2d) 556]; *Price* v. *McDonald*, 7 Cal. App. (2d) 77 [45 Pac. (2d) 425].)

First we will concern ourselves with the issues raised by the pleadings. The answer to paragraph VI of plaintiffs' complaint created an issue on the allegation that on December 12, 1936, at 5:45 P. M. John Blanton, Jr., walked easterly across Euclid Avenue near the intersection with G Street in the city of Upland; that Robert B. Curry so negligently drove his Buick as to collide with the person of Blanton, causing him injury. This same allegation runs through the second, third and fourth causes of action, and is the only important allegation upon which issue is joined under the plaintiffs' complaint. An issue is also made by the pleadings on the defendants' affirmative defense of contributory negligence.

Now applying the plaintiffs' offered instructions to the foregoing pleadings to determine whether the matters mentioned in the instructions were raised by the pleadings, we will consider these instructions to determine whether the evidence offered at the trial revealed a justification for the giv-

ing of the instructions which involved "questions of law developed by the evidence, and not disclosed by the pleadings".

█ Plaintiffs' instructions numbers 1, 2, 6 and 28 deal exclusively with the rule of law that the plaintiff, if traversing an unmarked crosswalk, as defined in the instructions, was entitled to the right of way, and further instructed the jury that if they found a violation thereof was the proximate cause of the accident involved, then the plaintiff was entitled to a verdict, unless they further found that the plaintiff was guilty of negligence contributing to the accident. These instructions, dealing with this subject, were in substance in accordance with sections 85, 87 and 560a of the Vehicle Code effective September 15, 1935. It cannot be questioned that this principle of law was the very essence of plaintiffs' case under the sections as set forth hereinbefore, and if the plaintiff was proceeding in a place where he was entitled to the right of way and was struck, then that, in itself, might justify the jury in returning a verdict in his favor under proper instructions. The fact that an unmarked crosswalk was involved in the instant case does not appear in any respect from the pleadings hereinabove set forth. The only reference which could impliedly have any bearing on an unmarked crosswalk was that the accident happened at or near the intersection of Euclid Avenue and G Street. It is therefore apparent that the foregoing allegation is not equivalent to any statement that the accident occurred in an unmarked crosswalk. This factor in the plaintiffs' case arose by virtue of the evidence introduced at the trial and therefore plaintiffs were under no obligation to submit those instructions before the first witness was sworn.

█ Plaintiffs' instruction number 4 was taken from the language of *Eastman* v. *Rabbeth,* 128 Cal. App. 534 [17 Pac. (2d) 1009], *Stone* v. *Gill,* 52 Cal. App. 234 [198 Pac. 640], and *Donovan* v. *Hornaday,* 3 Cal. App. (2d) 103 [38 Pac. (2d) 824], and deals with the duty of a driver to maintain a lookout for persons in the roadway, where the place in which the accident occurred was sufficiently illuminated, and states that if the jury found that the defendant failed to keep such a lookout, this could be considered in determining the question of negligence. The proposition of the illumination, whether by street light or otherwise, and the evidence of

the lookout maintained, if any, were all matters presented by the evidence, and nowhere alluded to in the pleadings.

Instruction number 5 deals with the doctrine of last clear chance.

From a cursory examination of the evidence we are not convinced that such an instruction was proper under the circumstances. (*Girdner* v. *Union Oil Co.*, 216 Cal. 197, 202 [13 Pac. (2d) 915]; *Gore* v. *Market Street Ry. Co.*, 4 Cal. App. (2d) 154 [48 Pac. (2d) 2].)

Other instructions, without enumerating them, bearing on the question of speed at the place of the accident, were essential to a proper determination of the rights of the parties. The permissible speed at that point could not be determined by the pleadings. Production of evidence was necessary to establish the nature of the district to determine the law applicable thereto. No instruction on this point was given.

Without further analysis of the proposed instructions, we are convinced that at least the substance of the instructions referred to should have been given. The jury should have been properly instructed on the issues presented. Although the trial court has our profound sympathy, we are convinced that the refusal to give these instructions, together with the action of the court in waiving the provisions of section 607a of the Code of Civil Procedure as to the defendants and allowing them to present their instructions practically *in toto*, after the first witness was sworn, and then foreclosing plaintiffs under the same section from presenting his instructions material to the issues and not developed by the pleadings, was prejudicially erroneous.

The attempted appeal from the order denying the motion for new trial is dismissed. (*Chichester* v. *Seymour*, 28 Cal. App. (2d) 696 [83 Pac. (2d) 301].) The judgment is reversed.

Barnard, P. J., and Marks, J., concurred.

A petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 11, 1940.